

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

GERALD C. MANN
XXXXXXXXXXXXXXX
ATTORNEY GENERAL

February 7, 1939

Honorable L. A. Woods
State Superintendent
Austin, Texas

Dear Mr. Woods:

> Opinion No. O-173
> Re:  Can Scholastics residing in
>      District of less than twenty
>      whose grade is not there taught
>      demand tuition payment from
>      Equalization Fund.

Under date  of January 18, 1939, you wrote the following letter re-
questing an opinion:

> "Section 2 of House Bill No. 133, Acts of the Forty-fifth
> Legislature, Special Session, provides as a part of the
> Equalization Law the maximum and minimum scholastic
> limitations for districts qualifying for any type of aid
> from the Equalization Fund.  Under the section quoted above
> a district with fewer than twenty scholastics originally
> enumerated would not be eligible for any type of aid.

> "The present High School Tuition Law, House Bill No. 158,
> provides that "students whose grade is not taught in his
> home district  may attend any school of higher classification
> which he may choose."  In this instance there seems to be
> a conflict between these two bills.

> "1.  Can a receiving high school demand tuition payment out
> of the Equalization Fund, if the sending district has fewer
> than twenty scholastics?

> "2.  In the event this tuition payment is not the
> responsibility of the State, is the responsibility with the
> sending district or with the individual pupil concerned?"

In reply thereto, this is to advise that the Equalization Bill, Commonly
known as the Rural Aid Law, provides in general terms that this bill
is for the aid of schools of more than twenty scholastics and not over
five hundred, and makes certain provisions regarding the tax rate of
the district and provides that aid can be given in case of need.  It
also provides for transfers and for aid in certain counties where the
Scholastic population is less than 1400 and the Scholastic population
of the District is less than twenty.

The Rural Aid Law above referred to provides that it shall be administered in conformity with House Bill 158 of the Fourty-fourth Legislature as amended, and this House Bill provides among other things with regard to the payment of high school tuition:

" . . . After the expiration of the time that the State and county available funds will operate the free schools of the district, the receiving district may charge such pupil tuition at a rate fixed by the Board of Trustees of the receiving district, and approved by the State Department of Education, such rate to be based upon the budgeted expenditures for maintenance of high school grades of the receiving district for the current school grades of the receiving district for the current school year, exclusive of bonds and interest thereon. It is further provided  that in no instance shall the State be obligated to pay out of the funds appropriated for this purpose a tuition rate in excess of Seven Dollars and Fifty Cents ($7.50) per month per pupil."

Article 2678-A of the Revised Statutes of Texas provides with regard to the Classification of schools and the arrangements regarding scholastics who reside in district where their grades are not taught:

" . . . In the event any school is so classified that a resident high school student within the free school age cannot receive instruction in his home district, his tuition for the number of months attended in any other high school  recognized by either county or state shall be paid by warrants drawn by the local board of trustees on funds of said district and approved by the county superintendent. . ."

Hence, we are of the opinion that it was not the intention of the Legislature to prevent a high school pupil from receiving the benefit of the Rural Aid Law merely because of the fact that his grade is not taught in the home district.  First, because of the fact that in counties, of less than 1, 400 scholastic population in the common school districts, his home district of less than twenty scholastics would receive rural aid, and if his home district is in a county of more than 1,400 scholastic population and his home district is less than twenty, then, and in that event the provision of House Bill 158 would take care of him by virtue of the fact that the district to which he went to attend school could use his presence as one of the reasons for showing a need in procuring rural aid for the district which he was then attending.

If this were not the law and the intention of the Legislature, then the county school Trustees by reclassifying a district or rearranging its boundary, or the Legislature by its own act would cut off and make an orphan of the high school student who resides in the sma .1 district, and thereby depriving aid to one of they very children that the Legislature was seeking to aid.  We do not believe that such was the intention to discriminate.

We therefore, hold that there is no conflict between the present high school tuition law commonly known as House Bill 158 and the Rural Aid Law, as it now written, and that the receiving high school district can demand and receive tuition payment out of the Equalization Fund if the sending district has less than twenty scholastics, even though sending district has fewer than twenty scholastics.

This tuition payment is the responsibility of the State after the sending district funds are expended, but of course, primarily the sending district must expend its funds in that respect if it has the funds, and then after this money is exhausted, the State must assume the responsibility and then after the rural aid is exhausted, it will, of course, become the individual responsibility of the pupil concerned.

Yours very truly

ATTORNEY GENERAL OF TEXAS

s/ Geo. S. Berry


By
   Geo. S. Berry
   Assistant

GSB:lw/ ldw

APPROVED:
s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS